UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| WENDY KELLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-04078-SLD-JEH |
| | ) |
| THE PROJECT OF THE QUAD CITIES, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

The Court previously granted Defendant The Project of the Quad Cities, Inc.'s ("The Project") motion for summary judgment as to Plaintiff Wendy Kelly's claim that her termination from The Project constituted race discrimination. *See* Apr. 21, 2021 Order 16, ECF No. 23. Upon its own recommendation, the Court now considers whether to grant summary judgment in The Project's favor on Kelly's claim that The Project also discriminated against her based on her race by paying her a lower salary than those of Caucasian employees performing similar jobs. The Court finds that The Project is entitled to summary judgment on the disparate pay claim.

## BACKGROUND[1]

Kelly, who is African American, served as the executive director of The Project, a not for profit corporation, from 2008 until April 20, 2017. As executive director, she initially earned a yearly salary of $44,000. At the time her employment ended, she was earning $62,000 per year

---

[1] At summary judgment, a court must "constru[e] the record in the light most favorable to the" party against whom judgment is contemplated. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, the factual background of this case is drawn from The Project's statement of undisputed material facts, Def.'s Mot. Summ. J. 2–13, ECF No. 17; Kelly's statement of disputed material facts and additional material facts, Pl.'s Resistance Mot. Summ. J. 2–10, ECF No. 18; The Project's reply to Kelly's additional material facts, Def.'s Reply 1–4, ECF No. 19; and exhibits to these filings. A more detailed factual background section appears in the Court's April 21, 2021 Order. *See* Apr. 21, 2021 Order 1–5.

1

in addition to a biweekly mileage allowance of $400. During the final year of her employment, she requested that her salary be increased to $72,000; she instead received a five percent raise. At the same time that she received this raise, the board capped raises for all other non-grant employees at three percent.

In early 2016, The Project developed a strategic plan. A PowerPoint slide deck was created as a part of this process, incorporating written statements from board members. A slide bearing the heading "Most Significant Weaknesses" contained a bullet point that read:

> Staff still seems to have a slightly adversarial relationship with the Board. The Board is now full of competent, professional people, many of whom are not a part of "the community". This is actually an advantage[—]if harnessed, the collective expertise of this Board is capable of drastically changing the impact the Agency has in the larger QC community. We have to find a way to move away from the ghetto-ized perception that just isn't a reality in 2016.

Strategic Planning PowerPoint 4, Def.'s Mot. Summ. J. Ex. 2, ECF No. 17-2. At a strategic planning meeting, Kelly commented that she believed this statement to be racist. Board member Sarah Stevens admitted that she wrote the statement and said that "she didn't mean it like that." Kelly Dep. 37:22–38:7, Def.'s Mot. Summ. J. Ex. 1, ECF No. 17-1.

Kelly met with Laura Kopp, another board member, in November of 2016. At that time, Kelly had natural hair and was wearing it down; she testified that "[i]t was kind of fuzzed out and a very natural look." *Id*. at 81:20–82:2. Kopp asked her, "That's the best you can do with that?" *Id*. at 81:21–22. Kelly did not inform Kopp or any other board member that this conversation made her uncomfortable.

In April of 2017, a majority of The Project's board of directors voted to terminate Kelly. She was presented with a choice: she could sign a document resigning from her job, or she could sign another document and be fired. She signed the document resigning from her position as

executive director.  After Kelly's resignation, Andrea Meirick, a Caucasian woman, was hired as executive director of The Project.  She received a base salary of $80,000 per year.

Kelly initiated this suit on April 11, 2019, bringing claims for race discrimination in employment in violation of 42 U.S.C. § 1981 (Count I) and breach of an employment agreement (Count II).  Compl. 1–5, ECF No. 1.  In Count I, Kelly alleged that The Project discriminated against her on the basis of her race in two ways: first, the board voted to terminate her, and second, it failed to pay her a salary similar to those of Caucasian executive employees of not for profit organizations, such as Meirick.  *Id*. at 1–3.  The Court dismissed Count II with prejudice on August 2, 2019, Aug. 2, 2019 Order 4, ECF No. 8, and on April 21, 2021, it granted The Project's motion for summary judgment as to Kelly's claim in Count I that her termination constituted race discrimination, Apr. 21, 2021 Order 16.  While recognizing that The Project had failed to argue for summary judgment on Count I's disparate pay claim, the Court noted that it was inclined to enter summary judgment in The Project's favor as to this claim pursuant to Federal Rule of Civil Procedure 56(f)(3) and permitted the parties to submit additional briefs on the issue within 21 days of entry of that Order.  *Id*. at 15–17.  The Project submitted a supplemental brief, Def.'s Br. Supp. Summ. J., ECF No. 24, but Kelly did not.[2]  The Court now addresses the disparate pay claim.

## DISCUSSION

### I.     Legal Standard

Summary judgment is warranted when there is no genuine dispute as to any material fact and the party in whose favor summary judgment is contemplated is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The court must construe the record in the light most

---

[2] Kelly did, however, make arguments in response to the motion for summary judgment related to her disparate pay claim.  *See* Pl.'s Resistance Mot. Summ. J. 1–2, 11.  The Court will refer to these arguments below.

3

favorable to the party against whom summary judgment is considered, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [that party]," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). However, that party "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted). A court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute," but it must give the parties notice and a reasonable time to respond. Fed. R. Civ. P. 56(f)(3).

## II.     Analysis

Kelly brings her disparate pay claim under 42 U.S.C. § 1981, Compl. 1–3, which prohibits discrimination on the basis of race in the making and forming of contracts, *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013); *see* 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."). "Employment suffices as a contractual relationship under [§] 1981." *James v. Get Fresh Produce, Inc.*, No. 18 C 4788, 2018 WL 6199003, at *7 (N.D. Ill. Nov. 28, 2018).

When evaluating a § 1981 claim of employment discrimination at summary judgment, a district court must determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).[3] A plaintiff may cite to direct or

---

[3] In the Seventh Circuit, courts "generally apply the same standards to Title VII [of the Civil Rights Act of 1964] and [§] 1981 race discrimination claims at the summary judgment stage." *Smiley*, 714 F.3d at 1002; *see also James*, 2018 WL 6199003, at *8 ("[T]he substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under § 1981."). Thus, the Court cites to § 1981 and Title VII cases interchangeably.

circumstantial evidence of discrimination to show causation; examples of circumstantial evidence that may "support an inference of intentional discrimination [include] ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 929 (7th Cir. 2020). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . . ." *Ortiz*, 834 F.3d at 765. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

One method a plaintiff may use for "organizing, presenting, and assessing circumstantial evidence" in discrimination cases is the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which

> the plaintiff has the initial burden of establishing that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer;

the burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224–25 (7th Cir. 2017) (alteration in original) (quotation marks omitted).

The Project argues that Kelly is unable to establish a *prima facie* case of discrimination based on disparate pay under the *McDonnell Douglas* framework nor show that there is sufficient evidence in the record as a whole to demonstrate discrimination. Def.'s Br. Supp. Summ. J. 3–6. Analyzing this claim first under the *McDonnell Douglas* framework, the Court finds that there is

5

no question that Kelly was a member of a protected class and that she received a lower salary than Meirick, the only proposed comparator that she has identified.[4]  *See* Pl.'s Resistance Mot. Summ. J. 11, ECF No. 18.  However, as the Court noted in its previous Order, Meirick is not similarly situated to Kelly.  *See* Apr. 21, 2021 Order 10.

"[W]hether employees are similarly situated is a flexible, common-sense, and factual inquiry."  *David*, 846 F.3d at 225–26 (quotation marks omitted) (stating that courts should consider such factors as "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision" (quotation marks omitted)).  The burden of establishing this—through citations to evidence—belongs to Kelly.  *See id.* at 225.

In her response to the motion for summary judgment, she cites only to the fact that Meirick, a Caucasian woman, received a salary of $80,000, while Kelly was paid $62,000 per year, Pl.'s Resistance Mot. Summ. J. 7, 11; she offers nothing to prove that she possessed comparable qualifications to Meirick.  Furthermore, The Project cites in its reply to evidence showing that Meirick had substantially more experience than Kelly in overseeing an organization prior to assuming the position of executive director.  It attaches an affidavit from Meirick stating that prior to becoming executive director of The Project, she served as the Manager of Hospital and Outpatient Operations for Genesis Health System, a position in which she oversaw up to 400 staff members and had a budget of over $40 million, which was "substantially higher than that of The Project at the time of [her] hiring."  Meirick Aff. ¶ 4, Def.'s Reply Ex. 9, ECF No. 19-1.

---

[4] While the complaint also suggests that Kelly is alleging a disparate pay claim based on the disparity between her salary and those of other executives managing not for profit organizations, *see* Compl. 2 ("[Kelly] asked for a pay increase to an annual salary of $72,000.00 which was commensurate with the compensation paid to executives who manage not-for-profit organizations."), she has not identified any potential comparators in this category.

The Project asserts that, in contrast, Kelly was a substance abuse counselor prior to joining The Project and that, while executive director, she never supervised more than 15 or 16 employees. Def.'s Reply 1–2, ECF No. 19. Kelly has not shown that she was similarly qualified to Meirick for the role of executive director of The Project, and, as such, she has failed to establish a *prima facie* case for discrimination based on disparate pay.

Neither has she shown that the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that [her] race . . . caused the . . . adverse employment action." *See Ortiz*, 834 F.3d at 765. She states that Meirick was paid more than her for the job of executive director and argues that The Project "has not come up with any facts to indicate why [Meirick] was paid $18,000.00 a year more than [she] was," Pl.'s Resistance Mot. Summ. J. 11, but it is her burden, not The Project's, to provide evidence to support that the reason for the difference in pay was her race. *See Burdine*, 450 U.S. at 253. This she has not done. And although the allegedly racially insensitive statements made by two board members are circumstantial evidence that may be relevant to the inquiry, *see Joll*, 953 F.3d at 929 (noting that "ambiguous or suggestive comments" can "support an inference of intentional discrimination"), they are not sufficient to show that The Project's failure to pay her the same salary as Meirick resulted from discriminatory intent. "Standing alone, biased comments do not establish discriminatory motive unless they were by the decision maker and can be connected to the decision." *Perez v. Thorntons, Inc.*, 731 F.3d 699, 709 (7th Cir. 2013); *see Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007) ("[I]solated comments that are no more than stray remarks in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." (alteration in original) (quotation marks omitted)), *overruled on other grounds by Ortiz*, 834 F.3d 760. Kelly has provided no evidence to connect

these comments with The Project's decisions regarding her salary, and the Court cannot infer from these comments that The Project was racially motivated to pay her a lower salary than comparable non-African American employees.

The Court does not find that a reasonable jury could determine that, based on the evidence before it, Kelly's race was the reason why she received a lower salary than Meirick. As such, the Court grants The Project summary judgment on the disparate pay claim in Count I.

## CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment in The Project's favor on the disparate pay claim. As none of the claims in the complaint remain, the Clerk is directed to enter judgment and close the case.

Entered this 13th day of October, 2021.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE